OPINION
{¶ 1} On August 4, 1995, appellant, Keith Ungar, and appellee, Lori Ungar fka Kiko, were married. On December 19, 2000, appellee filed a complaint for divorce.
{¶ 2} A bench trial commenced on October 23, 2001. By judgment entry filed December 12, 2001, the trial court granted the parties a divorce and divided the parties' property. Specific to this appeal, the trial court awarded appellant all of the interest as well as all of the debt of his company, Venture Investment Property (hereinafter "VIP"), which the trial court deemed marital property.
{¶ 3} On January 4, 2002, appellant filed a notice of appeal regarding VIP's debt allocation. This court remanded the matter to the trial court for further findings of fact. See, Ungar v. Ungar, Stark App. No. 2002CA00004, 2002-Ohio-4387. The trial court filed a judgment entry on November 15, 2002, finding VIP to be marital property and awarding VIP's assets and liabilities to appellant.
{¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I
{¶ 5} "THE TRIAL COURT ABUSED ITS DISCRETION IN DIVIDING THE MARITAL ASSETS AND LIABILITIES."
 I
{¶ 6} Appellant claims the trial court abused its discretion in dividing the marital assets and liabilities. We disagree.
{¶ 7} The trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case. Cherry v. Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb. v. Holcomb (1989), 44 Ohio St.3d 128. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
{¶ 8} This matter was specifically remanded to the trial court as follows:
{¶ 9} "Since it is unclear whether the trial court, in fact, characterized the debt created by VIP as appellant's separate and personal debt, this matter is remanded to the trial court for a determination as to whether such debt is separate or marital. If the trial court, on remand, characterizes the same as marital property, the trial court 'shall make written findings of fact that support the determination that the marital property has been equitably divided.' See, R.C. 3105.171(G). Furthermore, if, on remand, the trial court divides the marital property unequally, the trial court shall provide findings of fact to support this division of property as required by R.C. 3105.171(G). See, Matic v. Matic (July 27, 2001), Geauga App. No. 2000-G-2266." Ungar v. Ungar, Stark App. No. 2002CA00004, 2002-Ohio-4387, at 7-8.
{¶ 10} On remand, the trial court found the following:
{¶ 11} "It is the findings of the Trial Court that VIP Corporation was marital property. Further, it is the findings of the Trial Court that VIP was totally controlled by the Defendant-Appellant, Keith Ungar. His testimony at the trial indicated his total control of this company. Upon cross examination Mr. Ungar gave an arrogant responses (sic) that of course these were great investments and he made the decisions with respect to this Corporation. The Court awarded Mr. Ungar the assets of the Corporation (properties on Hills Dales Rd., Alabama Avenue and Mexico) as well as the liabilities. The Court finds the VIP Corporation should be awarded to the Defendant." See, Judgment Entry filed November 15, 2002.
{¶ 12} Appellant now argues given no specific findings of malfeasance or financial misconduct, the trial court's decision is an inequitable division of the parties' liabilities. Appellant points out the trial court did not give its reasons for such an inequitable division as mandated by R.C. 3105.171(G).
{¶ 13} Despite the lack of specific findings, we find, in our review of the record, there was not an inequitable division of the liabilities as it pertains to appellant. Together, the parties owned the marital residence on Brentwood, Brook Terrace Apartments, a Congress Lake property and a Colorado property.
{¶ 14} The Brentwood property, the marital residence, was sold and the proceeds were to be used to pay off marital debt. However, during closing, a $68,360.13 premarital line of credit incurred by appellant was discovered. T. at 15-16. In order to close, a judgment lien against appellant by appellee's father in the amount of $35,691.76 was removed. T. at 14-15, 77-78. In addition, properties owned by appellant's VIP company, which the trial court deemed as marital property, were sold to help pay down the debt. T. at 15-16. Clearly, as a result of the Brentwood property sale, appellant was relieved of $104,051.89 worth of debt ($68,360.13 plus $35,691.76). Appellee did not receive credit or reimbursement for these amounts. See, Judgment Entry filed December 12, 2001 at Order No. 11.
{¶ 15} Each party was assigned equal debt from the Brook Terrace Apartments property and equal proceeds from the Congress Lake property. See, Judgment Entry filed December 12, 2001 at Order Nos. 6 and 11. The Brook Terrace Apartments property carries a second mortgage of $440,000.00 due to a business venture appellant entered into with Brian Stymer called Ripit Golf and Sports Equipment. T. at 91. According to Mr. Stymer, appellant is responsible for $220,000.00, half of the $440,000.00. T. at 65-66. The trial court awarded appellant "any and all proceeds from the `Ripit' failed golf club venture." See, Judgment Entry filed December 12, 2001 at Order No. 7. Considering the trial court assigned the debt equally, appellee is responsible for half of the Ripit debt, $110,000.00, and is not entitled to any proceeds from the venture.
{¶ 16} The Colorado property has a negative value ($3,725.00) and was awarded to appellee. Id. at Finding No. 12 and Order No. 9; T. at 26, 101.
{¶ 17} The VIP company has three properties remaining (Alabama, Hills and Dales, Mexico) worth approximately $270,000.00 with debt of $229,527.00. T. at 105-108. That leaves a positive value of $40,473.00. Because appellant owns ninety-nine percent of the company (one percent is owned by a third party), appellant's positive interest in the VIP properties is $40,068.27. T. at 105. Also, $30,000.00 was realized from the sale of a vehicle which went back into the company. T. at 109.
{¶ 18} Defendant's Exhibit F lists the parties' debt, including debt allocated to VIP. The VIP debt, minus the mortgages for the three properties discussed supra, amounts to $215,818.00 of which, ninety-nine percent equals $213,659.82. This amount, $213,659.82, balanced against the positive value of $40,068.27 and the forgiveness of $104,051.89 worth of debt involving the Brentwood property sale, leaves appellant with a debt of $69,539.66. Throw in the $110,000.00 owed by appellee on the Brook Terrace Apartments property and appellant is in the black in the amount of $40,460.34. This amount does not take into consideration half of the value of the sale of appellant's vehicle, $15,000.00, which was not credited to appellee. In addition, during the temporary orders, given the fact that appellant denied receiving income, appellee paid $72,616.00 for various mortgages, taxes and insurances to preserve the assets of the parties, including the marital residence which continued to house appellant after appellee had moved out. See, Judgment Entry filed December 12, 2001 at Finding No. 17. Appellee did not receive credit or reimbursement for this amount. Id. at Order No. 11.
{¶ 19} Upon review, we find the property division is not inequitable as it pertains to appellant.
{¶ 20} The sole assignment of error is denied.
{¶ 21} The judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is hereby affirmed.
By Farmer, P.J., Wise, J. and Boggins, J. concur.